## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **PAUL CLARK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | **SA-06-CV-0866 FB (NN)** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:**   **Hon. Fred Biery**
**United States District Judge**

### I. Introduction

Plaintiff Paul Clark brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Clark was not disabled for the purposes of the Social Security Act (the Act) and denying Clark's application for Disability Income Benefits (DIB).  Clark asks the district court to reverse the decision and to render judgment in his favor.  In the alternative, Clark asks the district court to reverse the decision and remand the case for further proceedings.

After considering Clark's brief in support of his complaint,[1] the brief in support of the Commissioner's decision,[2] the record of the SSA proceedings, the pleadings on file, the

---

[1]Docket entry # 9.

[2]Docket entry # 11.

applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[3]

## II. Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## III. Administrative Proceedings

Based on the record in this case, Clark exhausted his administrative remedies prior to filing this action in federal court.  Clark applied for DIB on October 15, 2002, alleging disability beginning June 30, 1995.[4]  The Commissioner denied the application initially and on reconsideration.[5]  Clark then asked for a hearing before an ALJ.[6]  A hearing was held before an ALJ on April 5, 2004.[7]  During the hearing, Clark amended his alleged onset date to August 1, 1998.[8]  The ALJ issued a decision on June 18, 2004, determining that Clark was insured for

---

[3]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[4]SSA record, p. 50.

[5]*Id*. at pp. 23, 24, 25-9 & 32-5.

[6]*Id*. at p. 36.

[7]*Id*. at pp. 989-1029.

[8]*Id*. at p. 992.

disability benefits until December 31, 2000 and concluding that Clark was not disabled within the meaning of the Act during the time period August 1, 1998 to December 31, 2000.[9]  Clark asked for review of the decision on August 9, 2004.[10]  The SSA Appeals Council vacated the ALJ's decision on December 10, 2004 and remanded Clark's case to the ALJ to consider a statement from Clark's treating physician, to obtain evidence from an orthopaedic expert to clarify the nature and severity of Clark's impairments, and to further consider Clark's residual functional capacity.[11]  A different ALJ conducted a second hearing on January 20, 2006.[12]  The ALJ issued a decision on February 28, 2006, determining that Clark was not disabled during the relevant time period.[13]  Clark asked for review of the decision on March 20, 2006.[14]  The Appeals Council denied the request for review on August 11, 2006 after determining that no basis existed for reviewing the ALJ's decision.[15]  The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). Clark filed this action seeking review of the Commissioner's decision on October 4, 2006.[16]

---

[9]*Id*. at p. 723-33.

[10]*Id*. at p. 738.

[11]*Id*. at p. 735.

[12]*Id*. at pp. 1030-84.

[13]*Id*. at pp. 10-21.

[14]*Id*. at p. 9.

[15]*Id*. at p. 5.

[16]*See* Clark's complaint, docket entry # 1.

## IV. <u>Issue Presented</u>

Is the ALJ's decision that Clark was not under a "disability," as defined by the Act, during the time period August 1, 1998 to December 31, 2000, supported by substantial evidence and does the decision comport with relevant legal standards?

## V. <u>Analysis</u>

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[17]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[19]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[20]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its

---

[17]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[18]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[19]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[20]*Martinez*, 64 F.3d at 173.

judgment for that of the Commissioner.[21]  Conflicts in the evidence and credibility assessments

are for the Commissioner and not for the courts to resolve.[22]  Four elements of proof are weighed

by the courts in determining if substantial evidence supports the Commissioner's determination:

(1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians,

(3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age,

education and work experience.[23]

### 1. Entitlement to Benefits

Every individual who meets certain income and resource requirements, has filed an

application for benefits, and is under a disability, is eligible to receive DIB benefits.[24]  The term

"disabled" or "disability" means the inability to "engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months."[25]  A claimant shall be determined to be disabled only if his physical or

mental impairment or impairments are so severe that he is unable to not only do his previous

work, but cannot, considering his age, education, and work experience, participate in any other

kind of substantial gainful work which exists in significant numbers in the national economy,

---

[21]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[22]*Martinez*, 64 F.3d at 174.

[23]*Id*.

[24]42 U.S.C. § 1382(a)(1) & (2).

[25]42 U.S.C. § 1382c(a)(3)(A).

regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[26]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[27]  A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[28]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[29]  If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[30]  The second step involves determining whether the claimant's impairment is severe.[31]  If it is not severe, the claimant is deemed not disabled.[32]  In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[33]  If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.[34]  If the impairment

---

[26]42 U.S.C. § 1382c(a)(3)(B).

[27]20 C.F.R. §§ 404.1520 and 416.920.

[28]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[29]20 C.F.R. §§ 404.1520 and 416.920.

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Id.*

is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of his past work.[35]  If the claimant is still able to do his past work, the claimant is not disabled.[36]  If the claimant cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities, age, education, and work experience, to do other work.[37]  If the claimant cannot do other work, he will be found disabled.  The claimant bears the burden of proof at the first four steps of the sequential analysis.[38]  Once the claimant has shown that he is unable to perform his or her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[39]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[40]

**B. Findings and Conclusions of the ALJ**

In the instant case, the ALJ reached his decision at step five of the evaluation process.  At step one, the ALJ determined that Clark had not engaged in substantial gainful activity since his

---

[35]*Id.*

[36]*Id.*

[37]*Id.*

[38]*Leggett*, 67 F.3d at 564.

[39]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[40]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

7

alleged onset date.[41]  At step two, the ALJ determined that Clark has medically determinable impairments due to degenerative joint disease, degenerative disc disease, migraine headaches, right shoulder impingement syndrome, carpal tunnel syndrome, and hypothyroidism.[42]  The ALJ characterized these impairments as severe.[43]  At step three, the ALJ found that Clark's impairments, either singly or in combination, are not severe enough to meet, medically equal or functionally equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1).[44]  At step four, the ALJ found that Clark is unable to perform any of his past relevant work and that Clark can lift and/or carry 10 pounds occasionally and five pounds frequently; stand and/or walk two hours in an eight-hour day; and sit two hours in an eight-hour workday with the option to alternate positions every 60 minutes for five minute intervals.   The ALJ found that Clark is able to perform frequent, but not continuous, overhead reaching with the right upper extremity and occasional repetitive motion with the right upper extremity.  The ALJ further found that Clark can never perform stooping, kneeling, crouching, crawling, or balancing, or more than occasional climbing of ladders, ropes and scaffolds.  The ALJ also found that Clark could perform simple, routine, repetitive tasks that do not involve piece work production, due to possible lapses in concentration casual of pain.[45]  At step five, the ALJ determined that Clark has no transferrable skills from any past work, but that he could have performed a significant range

---

[41]SSA record, p. 14.

[42]*Id*. at p. 15.

[43]*Id*.

[44]*Id*.

[45]*Id*. at p. 18.

of sedentary work during the time period August 1, 1998 to December 31, 2000.[46]  The ALJ also

determined that a significant number of jobs existed in the national economy that Clark could do

during that time period.[47]  Thus, the ALJ concluded that Clark was not disabled as defined in the

Act during the time period August 1, 1998 to December 31, 2000.[48]

## C.  Clark's Allegations of Error

Clark doesn't quarrel with the ALJ's findings about his residual functional capacity, but

challenges the ALJ's step five analysis—the ALJ's determination that jobs existed in the national

economy that he could have performed during the time period August 1, 1998 to December 31,

2000.  Clark complains that the ALJ determined that he could have performed the job of hand-

packer—a job classified as medium work in the Dictionary of Occupational Titles (DOT)—even

though the ALJ found that he could perform only sedentary work.  He further complains that the

ALJ determined that he could perform the job of lens inserter—a job requiring frequent handling

and fingering—even though he can occasionally use his right upper extremity.  Clark contends

that the ALJ relied on testimony from a vocational expert that conflicts with the DOT's

characterizations of these jobs.  He further complains that substantial evidence does not indicate

that he could perform work on a regular and continuous basis.

"When, as here, the claimant suffers from additional limitations that make the

Medical-Vocational Guidelines [of the SSA regulations] inapplicable, the Commissioner must

---

[46]*Id*. at p. 21.

[47]*Id*.

[48]*Id*.

rely upon the services of a vocational expert or similar evidence"[49] to determine whether there is other work that the claimant can perform.[50]

> The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.  A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job.[51]

In determining whether the DOT constitutes similar evidence, the United States Court of Appeals for the Fifth Circuit has explained that the DOT "is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job."[52]  "To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT. . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so."[53]  In Clark's case, the record reflects an adequate basis for relying on the vocational expert's testimony.

The DOT describes the duties of a hand packager as follows:

Packages materials and products manually, performing any combination of following duties:  Cleans packaging containers.  Lines and pads crates and assembles cartons.  Obtains and sorts product.  Wraps protective material around product.  Starts, stops, and regulates speed of conveyor.  Inserts or pours product into containers or fills containers from spout or chute.  Weighs containers and adjusts quantity.  Nails, glues, or closes and seals containers.  Labels containers,

---

[49]*Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000).

[50]*See Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

[51]*Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

[52]*Carey*, 230 F.3d at 145.

[53]*Carey*, 230 F.3d at 146.

container tags, or products.  Sorts bundles or filled containers.  Packs special
arrangements or selections of product.  Inspects materials, products, and
containers at each step of packaging process.  Records information, such as
weight, time, and date packaged.[54]

The DOT describes the duties of lens inserter as follows:

Fits lenses into plastic sunglass frames and places frames on conveyor belt that
passes under heat lamps which soften frames preparatory to setting of lenses.[55]

Although the DOT classifies hand packager as medium work and the lens inserter job requires

frequent handling and fingering, substantial evidence supports the ALJ's determination that

Clark could have performed these jobs during the relevant time period.

The record shows that Clark retired from the U.S. Army in June 1995.  Clark did not

work after he retired, but he attended college from January 1997 to August 1998, studying

courses in graphic design.  Clark testified that he took a full 12-hour course load per semester[56]

and that he was required to study up to eight hours a day.[57]  Clark explained that despite

problems with his knees, he was able to sit down for his 50-minute courses, with a bathroom

break halfway through the class.[58]  Clark stated that he accommodated his knee problems by

spreading his study materials on his dining room table while doing his homework.[59]  Clark also

---

[54]DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES § 920.587-018.

[55]*Id.* at § 713.687-026.

[56]SSA record, p. 1064.

[57]*Id.* at p. 1070.

[58]*Id.* at p. 1071-2.

[59]*Id.* at 1071.

testified that he worked out while he was going to school.[60]  He explained that he was fully prepared to continue his classes in September 1998, but he discontinued taking classes because he was going to begin working as a city postal carrier.[61]  The post office did not hire Clark,[62] however, after Dr. Robert Jones—who examined Clark's fitness for duty—opined that Clark's medical conditions would be aggravated by the applicable job duties and that Clark's symptoms would be aggravated by even a sedentary level of functioning.[63]  That event appears to be the triggering event for Clark's alleged onset date.  Oddly, even though the DOT classifies a city letter carrier as medium work, Clark testified that he was prepared to perform that work.[64]

In addition to Clark's testimony about school activity, Clark testified that prior to 2000 and during the relevant time period, he vacuumed the house, mowed the lawn, helped his wife shop for groceries, and fished.[65]  Clark explained that although he had problems with carpal tunnel syndrome—an impairment that ostensibly prevents him from working as a lens inserter—since the 1980s, he just lived with it.[66]  Although Clark's right shoulder is impaired by impingement syndrome, he testified that he continued to go fishing during the relevant time

---

[60]*Id*. at p. 1059.

[61]*Id*. at pp. 1048, 1054 & 1063.

[62]*Id*. at p. 142.

[63]*Id*. at pp. 139-40.

[64]Dep't of Labor, Dictionary of Occupational Titles § 230.367-010.

[65]SSA record, pp. 1067-8.

[66]*Id*. at p. 1057.

period and that he was able to cast his rod with his right arm.[67]  This testimony indicates that Clark could have performed the duties of a hand packager or lens inserter because it shows that he successfully completed sedentary activities, to include some light work, despite his impairments.

The medical evidence also indicates that Clark could have worked as a hand packager or lens inserter.  Although Clark complained about migraine headaches, a January 22, 2001, magnetic resonance imaging (MRI) of the brain was normal.[68]  Clark undoubtedly suffered pain when he had a migraine, but he testified that he experienced 2 or 3 migraines per month when he was going to school and that medications had decreased the frequency of his migraines.[69]  Pain is disabling when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment."[70] The medical evidence does not show that the pain Clark experienced from migraines was constant or unremitting.  The evidence shows that Clark's pain was controlled by medication.[71] In addition, an electromyography and nerve conduction study performed in April 1996 showed no electrodiagnostic evidence of carpal tunnel syndrome, neuropathy, or left upper extremity radiculopathy.[72]  X-rays of Clark's knees taken in December 1998 showed that his bones, joints,

---

[67]*Id*. at p. 1068.

[68]*Id*. at p. 715.

[69]*Id*. at p. 1066.

[70]*Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).

[71]SSA record, p. 1066.

[72]*Id*. at p. 276.

and soft tissue were normal.[73]  Treatment notes dated July 1, 1999 demonstrate that Clark was diagnosed with mild right shoulder impingement syndrome and was advised to begin home exercise.[74]  On July 24, 1999, the Veterans Administration (VA) observed that although the "Postal Service stated [Clark] was not capable of performing the duties of a City Carrier due to degenerative disc disease of the lumbrosacral spine and chondromalacia of the left knee . . . [t]he VA examination . . . stated that [Clark] could be employable in something such a sitting down job or something very sedentary."[75]  The VA explained that an increased VA disability rating based on Clark's migraines was not warranted because there was a "likelihood of improvement" and an absence of "very frequent, completing prostrating, and prolonged attacks productive of severe economic inadaptability."[76]  By January 2000, treatment notes indicate that Clark was in less pain with an improved range of motion.[77]  Doctors advised Clark to continue taking Tylenol and Naprosyn as needed for pain.[78]  Such conservative treatment does not indicate that Clark was disabled at that time.[79]  In July 2000, Clark reported that he was "doing great without any complaints, staying active, and busy."[80]  Later X-rays of Clark's shoulder—on January 7,

---

[73]*Id*. at p. 258.

[74]*Id*. at p. 243.

[75]*Id*. at pp. 286-7.  *See id*. at p. 896.

[76]*Id*. at p. 287.

[77]*Id*. at p. 224.

[78]*Id*.

[79]*See Parfait v. Bowen*, 803 F.2d 810, 813-14 (5th Cir. 1986) (evidence of conservative treatment for disabling conditions discredits claimant's allegations of disability).

[80]SSA record, p. 212.

2002—showed only minimal degenerative disc changes.[81]  This evidence shows that Clark had

no impairments during the relevant time period that would have prevented him from doing a

significant range of sedentary work.

The ALJ posed a hypothetical question to the vocational expert at the January 2006

hearing.  That question included Clark's age, education, past relevant work experience, and

residual functional capacity for a limited range of sedentary work.[82]  The ALJ asked the

vocational expert to consider jobs that would require the claimant to use his dominant right upper

extremity "frequently, but not continuously for overhead reaching and up to occasionally for

repetitive motion activity, but is required to refrain entirely from stooping, kneeling, crouching

and crawling, balancing and climbing ladders, ropes and scaffolds, but can occasionally climb

ramps and stairs."[83]  The ALJ specified that the work must have "a sit/stand option averaging one

five-minute interval per hour and to embrace any difficulties that would be caused by any

concentration lapse or discomfort or any residuals from the impairments."[84]  The ALJ further

restricted the work to "simple routine repetitive tasks that do not involve piecework production

rate pace."[85]

In response, the vocational expert testified that such a hypothetical individual could

perform the sedentary jobs of lens inserter and hand packer which exist in significant numbers in

---

[81]*Id*. at p. 718.

[82]*Id*. at pp. 1076-7.

[83]*Id*.

[84]*Id*. at p. 1077.

[85]*Id*.

the national economy.[86]  Although the DOT classifies hand packager as medium work, that title

applies to a wide range of duties and industries.[87]  The wide range of activities and industries

indicate that some hand packagers are required to work at the medium strength level while others

are required to work at lesser strength levels.  The vocational expert recognized the range of

duties that hand packagers perform and testified that "there are hand packers at the sedentary

---

[86]*Id*. at pp. 1078-9.

[87]In the case of hand packager, the DOT provides the following:

> May stack, separate, count, pack, wrap, and weigh bakery products and be designated Bakery Worker (bakery products).  May apply preservative to aircraft and spaceship parts, package parts for shipment, and be designated Wrapper and Preserver (aircraft mfg.).  May be designated according to whether high-production or small-lot packaging as Fancy Packer (retail trade; wholesale tr.); Packaging-Line Attendant (any industry); specific packaging duty performed as filling, wrapping, packing, labeling, and container cleaning as Sack Sewer, Hand (any industry); kinds of equipment used or product packaged as Candle Wrapper (fabrication, nec); Carton Stapler (any industry); or whether packager performs associated duties as final assembly before packaging product as Novelty-Balloon Assembler And Packer (rubber goods). May weigh and package meat in retail store and be designated Meat Wrapper (retail trade). May be designated: Bagger (any industry); Bow Maker, Gift Wrapping (any industry); Box Maker, Cardboard (any industry); Box Wrapper (any industry); Bundler (any industry); Candy Packer (sugar & conf.); Caser, Rolled Glass (glass mfg.); Coil Strapper (steel & rel.); Container Filler (any industry); Filler (any industry); Furniture Packer (retail trade); Grader, Sausage And Wiener (meat products); Guncotton Packer (chemical); Inserter, Promotional Item (any industry); Inspector-Packager (any industry); Lidder (any industry); Mattress Packer (furniture); Packager, Meat (meat products); Packer, Dried Beef (meat products); Packer, Foamed-In-Place (any industry); Packer, Sausage And Wiener (meat products); Piece-Goods Packer (textile); Scaler, Sliced Bacon (meat products); Sponge Packer (wholesale tr.); Stamper (any industry); Table Worker (any industry); Tube Packer (rubber tire); Wrapper (any industry); Wrapper, Hand (can. & preserv.); Wrapping Remover (any industry).

DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES § 920.587-018.

level that does allow a change in position while you are working."[88]  The vocational expert also explained that a lens inserter is also permitted to change position often.[89]  Even if working as a lens inserter requires repetitive motion activities, the ALJ's hypothetical question incorporated Clark's impairment to his right shoulder and the vocational expert's response incorporated that impairment.

This evidence constitutes substantial evidence supporting the ALJ's determination that Clark could have performed other work existing in significant numbers in the national economy—in particular, hand packager and lens inserter.  No evidence suggests that Clark could not work on a regular and continuing basis during the relevant time period.

## VI.  Recommendation

Because substantial evidence supports the ALJ's decision that jobs existed in the economy that Clark could have done during the time period August 1998 to December 30, 2000, I recommend that Clark's request for relief (docket entry # 1) be DENIED and that the Commissioner's decision denying Clark's benefits be AFFIRMED.

## VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless

---

[88]*Id*. at p. 1078.

[89]*Id*.

17

this time period is modified by the district court.[90]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**

A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[91]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[92]

     **SIGNED** on June 15, 2007.

NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[90]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[91]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[92]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

18